MAHNKE *v.* FREER.

HIGHWAYS — ACCIDENT TO BICYCLIST — COLLISION — CONTRIBUTORY NEGLIGENCE.
Where, in an action for injuries to a bicyclist by being run down on a dark night by defendants, who were alleged to have been racing their horses, there was testimony that plaintiff was himself riding at a high rate of speed, and did not see the horses until it was too late to avoid them, his right to recover was properly made dependent on a finding that he was in the exercise of due care; the case not being one for the application of the rule of gross negligence.

Error to Wayne; Hosmer, J.   Submitted April 5, 1901.   Decided May 7, 1901.

Case by Max Mahnke against Edgar A. Freer, Richard H. Phillips, and Jacob E. Goldberg for injuries caused by a collision on the highway. From a judgment for defendants, plaintiff brings error. Affirmed.

*Edwin C. Bolton* and *Moore & Moore*, for appellant.

*Tarsney, Hayes, Lawson & Fitzpatrick*, for appellee Goldberg.

LONG, J. This action is brought to recover damages for injuries sustained by the plaintiff in being run over by the defendants while they were driving on the Boulevard in Detroit, the plaintiff at the time riding his bicycle on said Boulevard. The first count of the declaration charges that:

"At about half-past 7 in the evening, when it was quite dark, said plaintiff was traveling on a bicycle in an easterly direction on the south track of the Boulevard in said city of Detroit, and when at or near the point where the said Boulevard intersects Second street, in said city, said defendants and one other party, whose name is unknown to said plaintiff, were carelessly and negligently driving their horses and buggies, four abreast, with great speed, to wit, at the rate of 20 miles an hour, in a westerly direction along said south track, and came suddenly upon said plaintiff, and carelessly and negligently, and without giving said plaintiff any warning of their approach, and without any fault or negligence on his part, carelessly and negligently ran over said plaintiff, knocked him down, broke and destroyed his bicycle, broke his left leg, dislocated his shoulder, severely shocked and injured his back, head, shoulders, and nervous system," etc.

The second count charges that:

"Said defendants and another, with four horses and four buggies, drove along said Boulevard in a westerly direction in a reckless manner, at a very high rate of speed, and willfully and recklessly ran over said plaintiff, knocked him down," etc.

The plaintiff gave testimony tending to show that he was 26 years of age and accustomed to ride a wheel; that,

about 7:30 in the evening of that day, he and one Rolls were riding east on the Boulevard; that it was so dark he could see only about 100 feet ahead; that Rolls was ahead, and plaintiff 3 feet behind him, riding along slowly; that the Boulevard at this point is from 45 to 50 feet wide; that the first thing he heard was the defendants "yelling and hollering" at the horses; that he saw the shadows coming, but could not tell what it was, when Rolls said: "Look out; there are four rigs coming;" that Rolls turned to the right, close to the curb, and got through. The plaintiff then testified:

"I was in the center of the street. I saw I could not turn. I saw a passage open in the center, and I tried to get through. I saw four rigs, with horses, coming. They were coming at full speed. They were three abreast, and one a little behind,—about 8 or 10 feet behind. The horses took up the whole roadway. They were in a bunch, wheel to wheel. There was a passage of 2 or 3 feet between two of the three rigs. I tried to go through there. I got through till I came to the buggy that was behind. The forward wheel of that buggy struck the handle bar of my wheel. I got my leg into the buggy wheel, and it threw me into the air. My leg was broken. I did not know the men who were driving the rigs. I did not follow Rolls to the curb, because I did not have time. If I had followed him, I would have run into the horses. I went into the open space between the rigs because I thought I could get through there, and because I could not go any other wheres. The horses were going just as fast as they could pull out."

Mr. Rolls was sworn, and gave testimony which substantially corroborated that of plaintiff. The witness testified that he and plaintiff "just jogged along there" that evening.

Mr. Henry Kern was sworn in behalf of plaintiff, and testified that he was present and saw the four horses start on the Boulevard; that they turned around and started west; that each horse was driven before a light buggy; that defendant Goldberg drove one, defendant Phillips another, defendant Freer another, and that the other was

driven by a man by name of Yawkey; that these parties were talking about the speed of their horses; and that Phillips was evidently trying to catch up with Goldberg, and the others started as if they were also trying to keep up. Witness says: "They increased their speed after they passed me, as I could tell by the sound, but were out of sight when I heard the crash of the accident."

Defendant Goldberg testified that he did not know of the accident until he had gone through to Twelfth street, and then came back to where it occurred; that he was not driving to exceed from 4 to 6 miles an hour; that defendant Phillips was a short distance behind him, but that he did not see where Freer and Yawkey were.

Defendant Phillips testified that they were driving not to exceed 6 miles an hour; that Freer and Yawkey were behind, and that he (witness) did not know of the accident until he turned and came back.

Defendant Freer testified that Goldberg and Phillips were also speeding their horses; that Yawkey joined in with them, and they all started, and at about Second street he (witness) collided with this bicycle.

Policeman Scott, who was there, testified that the parties were driving not to exceed 6 miles an hour, but that the men on the bicycles were going at a high rate of speed,— 10 or 12 miles an hour; that the horses were not abreast of each other; that two of them were quite a little distance behind the others.

Policeman Parker testified that the horses were going not to exceed 6 miles an hour, and that the wheelmen were going 10 or 12 miles an hour.

Sergeant Yeager, of the police force, made a report to the police department at that time in which he stated:

"Max Mahnke, 790 Rivard street, had his leg broken by being run over by a horse driven by Ed. Freer. Mahnke was on a bicycle at the corner of Second and Boulevard. Four or five men were running their horses, and he didn't have time to get out of the way before being knocked over."

He testified that this was the substance of what was told him by policemen Scott and Parker at the time of the accident, and from which he made this report.

Upon this testimony the court charged the jury, substantially, that: If, at the time, the plaintiff was in the exercise of due care, and there was a concert of action on the part of the defendants to race their horses, the plaintiff could recover against all the defendants; but, before he could recover against any of them, the jury must find that their negligence was the proximate cause of the injury. If, however, they found that such negligence did not extend to all the defendants, then the verdict might be rendered against such defendant as was in fault, if the plaintiff himself was using due care. The jury returned a verdict in favor of defendants. Plaintiff brings error.

Counsel for plaintiff claim that the facts show that the defendants were guilty of gross negligence, and that all of them would be liable, regardless of the conduct of plaintiff. It is their claim that the case falls within the rule laid down in *Schindler* v. *Railway Co.*, 87 Mich. 411 (49 N. W. 670); *Bouwmeester* v. *Railroad Co.*, 63 Mich. 557 (30 N. W. 337). We think the case made by the testimony cannot be said to fall within the rule stated in those cases. All the parties had the right to ride and drive on the Boulevard. If the plaintiff and his companion were riding at a high and dangerous rate of speed, and by their own careless and reckless conduct put themselves in a position where it was impossible to avoid collision with the carriages being driven there, the plaintiff could not recover. There is some testimony showing that they were riding 10 or 12 miles an hour. It was so dark that they could not see to exceed 100 feet, as plaintiff himself confesses. We think, under the testimony, the court's charge very fairly submitted the question for the determination of the jury.

In view of this, the question raised by counsel in reference to the measure of damages is not of importance.

The judgment must be affirmed.

The other Justices concurred.