*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

JILL WHITE,

        Plaintiff-Appellant,

v

DIVA NAILS, LLC, and NAILS STUDIO,

        Defendants-Appellees.

UNPUBLISHED
June 25, 2020

No. 347847
Wayne Circuit Court
LC No. 17-012539-NO

Before: STEPHENS, P.J., and CAVANAGH and SERVITTO, JJ.

CAVANAGH J. (*dissenting*).

Plaintiff failed to establish that both nail technicians were infected with the herpes simplex virus, and thus, a jury could not conclude that more likely than not, but for their negligent conduct, plaintiff would not have contracted herpetic whitlow. If the nail technicians did not have the herpes simplex virus, how could they give it to plaintiff? It is just as likely that plaintiff contracted herpes whitlow at some time after leaving the nail salons with an open wound. Accordingly, I would affirm the trial court's order granting summary disposition in favor of defendants Diva Nails, LLC, and Nails Studio.

On April 19, 2016, the nail technician at Diva Nails cut the skin on plaintiff's right thumb with cuticle clippers while giving plaintiff a manicure. On April 23, 2016, the nail technician at Nails Studio reopened the cut on plaintiff's right thumb with cuticle clippers while changing plaintiff's nail polish. Days later, on April 26, 2016, plaintiff went to an urgent care facility because her right thumb was inflamed and painful. She was diagnosed with a bacterial infection and given antibiotics. After another urgent care visit and two hospital visits, plaintiff was diagnosed with herpes whitlow and prescribed antiviral medication. Herpes whitlow is a type of the herpes simplex 1 virus that infects a finger or thumb. The incubation period for the herpes simplex virus is one to 26 days—which means that you can have an active infection on the first day or even on day 26 after the exposure.

Plaintiff's expert witness, Dr. Michael McIlroy, testified that he believed plaintiff acquired the herpes virus at one of the nail salons. But he did not know if, in fact, either nail technician actually had the herpes simplex virus. Nevertheless, in McIlroy's opinion "one of the workers had

herpes simplex, more likely than not, and through the nail injury, transmitted their virus or the virus on the instrument to [plaintiff] . . . ." McIlroy explained that the herpes simplex 1 virus is usually transmitted by saliva so the saliva of one of the herpes-infected nail technicians who performed either of plaintiff's nail procedures likely transmitted the virus to plaintiff. The technician could have touched her mouth and had saliva on her finger and then transmitted the virus to plaintiff through her open wound. McIlroy testified that it was unlikely that the instruments used by either technician were the source of transmission because the virus does not usually survive on an instrument.

Plaintiff sued defendants, alleging that each defendant "engaged in indistinguishable negligent behavior and together they both caused Plaintiff to become infected." Both defendants filed motions for summary disposition under MCR 2.116(C)(10), arguing that alternative-liability theory was no longer viable in Michigan because the 1995 tort reform abolished joint liability, and thus, plaintiff could not prove causation. More specifically, defendants argued that plaintiff could not establish that, but for their negligence, she would not have been infected with the herpes virus. Instead, plaintiff merely offered pure speculation and conjecture as to the cause of her herpes infection. The trial court agreed with defendants, holding that plaintiff could not demonstrate the cause-in-fact element of proximate cause because there was no way to determine that she contracted the herpes virus at either nail salon. It was just as likely that plaintiff was exposed to the herpes virus before or after visiting the nail salons. In granting defendants' motions, the trial court did not decide whether the 1995 tort reform and abolition of joint liability eliminated alternative liability in Michigan. I would affirm the trial court's decision.

In my opinion, plaintiff failed to establish that a genuine issue of material fact existed on the issue whether either defendant caused her to contract herpes whitlow. Plaintiff contends that, while she cannot identify which nail technician caused her infection, she does not have to; instead, she can satisfy the causation element of her negligence claim using a theory of alternative-liability. Plaintiff relied on the testimony of her expert, McIlroy, to support her causation theory that a herpes-infected nail technician at either or both salons caused her to become infected with the herpes virus. But plaintiff never proved that both nail technicians in fact had the herpes simplex virus to pass on to plaintiff. McIlroy was merely *speculating* that the nail technicians were infected with the herpes virus. A valid theory of causation must be based on facts in evidence. *Craig v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004). Impermissible conjecture and mere speculation are insufficient to establish causation. *Id*.; *Skinner v Square D Co*, 445 Mich 153, 163-164; 516 NW2d 475 (1994). McIlroy testified that the herpes virus is transmitted by infected saliva, and it was unlikely to be transmitted by the instruments they used. There is no record evidence establishing that the nail technicians were infected with the herpes virus. In fact, one of the nail technicians testified that she did not have the herpes virus. If neither nail technician had the herpes virus, how could they pass it on to plaintiff? Thus, plaintiff cannot demonstrate causation and her claim must fail. The issue whether the 1995 tort reform eliminated alternative liability need not be decided in this case.

But even if an alternative liability theory is viable in Michigan, plaintiff's claim would fail. Under a theory of alternative liability, a plaintiff could seek recovery for an injury although she could not identify which of multiple tortfeasors caused her injury. As explained in the case of *Abel v Eli Lilly & Co*, 418 Mich 311; 343 NW2d 164 (1984), the doctrine was first formally recognized in a case involving a plaintiff who was shot at by two hunting companions but was only hit by one

of them. *Id*. at 325-326. The plaintiff could not meet his burden of proving cause-in-fact because there was no way to determine which one of the two defendants more likely than not shot him, i.e., there was a 50% chance that either of the defendants shot him. *Id*. at 326. As a matter of policy, it was decided that the two proved wrongdoers should bear the burden of absolving themselves rather than depriving the innocent plaintiff of a remedy. *Id*. at 326-327. This theory of "alternative liability" was formally approved by the *Abel* Court, which held that certain requirements must be met before a plaintiff could rely on that theory of liability, including: (1) it must be shown that all the defendants acted tortiously; (2) that the plaintiff was harmed by the conduct of one of the defendants; and (3) through no fault of her own, the plaintiff is unable to identify which defendant caused the injury. *Id*. at 331-332.

In this case, to advance an alternative-liability theory plaintiff would have to prove that *both* nail technicians who performed services on her were infected with the herpes virus, and therefore, it was impossible to determine *which* nail technician actually transmitted the herpes virus to plaintiff. Like the case of the two hunting companions discussed in *Abel*—where both hunters negligently shot a bullet at the plaintiff but only one bullet struck him and caused injury— here, both nail technicians would have had to be infected with the herpes virus (like the two bullets) and negligently performed nail services (like the shooting) so as to transmit the herpes virus to plaintiff. It would then be impossible for plaintiff to determine which nail technician actually transmitted the herpes virus because both were infected with it. But, again, there is no evidence in this case that both nail technicians were infected with the herpes virus, and thus, the transmission of the herpes virus cannot be sourced back to both nail salon defendants. It is just as possible that neither, or only one, nail technician was infected with the herpes virus. Plaintiff could also have been exposed to herpes-infected saliva after leaving the nail salons with an open wound. Accordingly, I would affirm the trial court's order granting defendants' motions for summary disposition.

/s/ Mark J. Cavanagh