Mollen, J.*
(concurring in Hymowitz and Hanfling; and dissenting in part in Tigue and Dolan). The issue presented to the court in this appeal is to determine whether the revival statute for DES claims is constitutional and has properly "opened the window” to enable injured parties to recover for their injuries caused by DES and, if so, how to best enable such plaintiffs to overcome the practical impossibility of bearing their normal burden of proof of demonstrating that the defendants caused their injuries. The majority has selected one approach to meet this issue. However, I am compelled to concur in part and dissent in part because I am convinced that another more appropriate method of approaching this issue is fairer and more just and equitable to the plaintiffs and to those defendants who could not have caused the plaintiff’s injuries, and which is consistent with established principles of tort law. I concur with the majority’s conclusion that the revival statute is, in all respects, constitutional and may be relied upon by the plaintiffs herein. I am also in complete agreement with the majority’s view that the market share theory of liability, based upon a national market, is an appropriate means by which to accord DES plaintiffs an opportunity to seek recovery for their injuries. However, I respectfully disagree with the majority’s conclusion that there should be no exculpation of those defendants who produced and marketed DES for pregnancy purposes, but who can prove, by a preponderance of the evidence, that they did not produce or market the particular pill ingested by the plaintiff’s mother. Moreover, in order to ensure that these plaintiffs receive full recovery of their damages, as they are properly entitled to by any fair standard, I would retain the principle of imposing joint and several liability upon those defendants which cannot exculpate themselves.
The emergence of the market share concept of liability in the field of products liability reflects a recognition by several jurisdictions throughout the United States that due to the *517 incidence of mass production and marketing of various drugs and fungible goods, consumers are many times harmed by a product which is not easily traceable to a specific manufacturer, particularly in those situations where the harm occurred many years prior to the discovery of the injuries and the cause thereof. Such is the situation in the DES cases now before us. Under traditional common-law tort principles, a plaintiff is required to establish the existence of a causal relationship between the act or omission of the defendant or defendants and the injury sustained (see, Morrissey v Conservative Gas Corp., 1 NY2d 741; Prosser and Keeton, Torts § 41, at 263 [5th ed]). However, given the reality of the situation in DES cases, including the lengthy passage of time, the generic form of most DES pills and the unavailability of pharmaceutical and physician records, it is, as a practical matter, impossible for most DES plaintiffs to bear the burden of proof of establishing the traditional tort element of causation.
Moreover, as noted by the majority, the tort doctrines of alternative liability and concerted action, both of which provide for recovery in situations where a plaintiff, through no fault of his or her own, cannot identify the actual wrongdoer, do not provide appropriate relief to these DES plaintiffs. Unlike the scenario present in the DES cases, the principle of alternative liability presupposes that the number of possible wrongdoers are few in number, that one of the joined defendants had to have actually caused the plaintiff’s injury and that the defendants are in a much better position than the plaintiff to identify the actual wrongdoer and, therefore, the burden is shifted to the defendants to prove who was the actual wrongdoer and who among them are to be exculpated (see, Summers v Tice, 33 Cal 2d 80, 199 P2d 1; Restatement [Second] of Torts § 433B [3]). However, in view of the difference in the factual circumstances, the theory of alternative liability does not provide a workable solution for DES plaintiffs.
The concept of concerted action liability requires, inter alia, that the plaintiff prove that all of the joined defendants had an understanding, expressed or implied, to participate in a common plan or design to commit a tortious act or to lend assistance to the wrongdoer (see, Prosser and Keeton, Torts § 46, at 323 [5th ed]). Typically, DES plaintiffs allege that the concerted action of the DES manufacturers consisted of using one another’s marketing techniques, relying upon each other’s testing and encouraging one another to market DES without *518 performing adequate testing or warnings. The courts, with few exceptions (see, e.g., Abel v Lilly & Co., 418 Mich 311, 343 NW2d 164), have rejected the applicability of concerted action liability to DES cases because the plaintiffs cannot establish the existence of an express or tacit agreement among DES manufacturers to market or produce DES without proper testing or warnings (see, e.g., Sindell v Abbott Labs., 26 Cal 3d 588, 607 P2d 924, cert denied 449 US 912; Martin v Abbott Labs., 102 Wash 2d 581, 689 P2d 368; Collins v Lilly & Co., 116 Wis 2d 166, 342 NW2d 37). The parallel or imitative conduct of DES manufacturers in producing and/or marketing DES, as the majority expressly notes, is insufficient, in and of itself, to establish concerted action liability (majority opn, at 506).
The principle of market share liability in DES litigation was first espoused by the California Supreme Court in Sindell v Abbott Labs, (supra), as a valid theory of manufacturer’s liability based upon each manufacturer’s share of the market. This approach provides DES plaintiffs with a means by which to recover damages for their injuries without the plaintiffs being held to the traditional tort requirement of identifying the actual wrongdoer. The public policy underpinnings of the Sindell rationale is that, from a perspective of fairness and equity, the DES manufacturers are in a better position than the innocent plaintiffs who have sustained grievous injuries to bear the cost of such injuries. Thus, the Sindell court held that once a plaintiff has joined a "substantial share” of the DES manufacturers of the relevant market in the action and has established that the sustained injuries were caused by the ingestion of DES by the plaintiff’s mother during pregnancy, the burden of proof shifts to each defendant to demonstrate, by a preponderance of the evidence, that it did not produce or market the pill ingested by the plaintiff’s mother. Those DES defendants who could not exculpate themselves, would then be liable for the proportion of the judgment which represented its share of the market. The intended result of the Sindell approach is that, "each manufacturer’s liability for an [particular DES] injury would be approximately equivalent to the damage caused by the DES it manufactured” (supra, at 613, 607 P2d, at 938).
The Wisconsin and Washington Supreme Courts subsequently adopted collective liability theories in DES cases based upon similar policy considerations; namely, as between the injured plaintiffs and the negligent defendants, the latter *519 should bear the cost of injury (Collins v Lilly & Co., 116 Wis 2d 166, 342 NW2d 37, supra; Martin v Abbott Labs., 102 Wash 2d 581, 689 P2d 368, supra). Both the Collins and Martin courts reasoned that since all of the DES manufacturers and distributors contributed to the risk of injury to the public and, consequently, the risk of injury to individual plaintiffs, each defendant shared, in some measure, a degree of culpability in producing or marketing DES. In Collins, the Wisconsin Supreme Court adopted a "risk contribution” theory of liability, and, in Martin, the Washington Supreme Court adopted what it termed a "market share alternative liability” theory. These two approaches differ from the Sindell theory primarily in the manner in which the damages are apportioned. Significantly, both the Supreme Courts of Wisconsin and Washington in the Collins and Martin cases, as did the Supreme Court of California in Sindell, provided that the joined or impleaded defendants may exculpate themselves from liability if they can establish, by a preponderance of the evidence, that they did not produce or market the particular DES pill taken by the plaintiff’s mother. Notably, in Collins, the Wisconsin Supreme Court explained that it would not adopt a risk contribution theory which would have imposed liability solely upon the DES defendants’ participation in the creation of the risk of injury even though some of the defendants could establish that they could not have actually caused the plaintiff’s injury. The Collin’s court noted, "[w]e still require it be shown that the defendant drug company reasonably could have contributed in some way to the actual injury” (supra, at 191, n 10, 342 NW2d, at 49, n 10). In fact, none of the jurisdictions which have adopted varying theories of collective liability in DES cases, has refused to permit exculpation of those defendants which have been able to prove that they could not have produced or marketed the pill which caused the particular plaintiff’s injuries, thereby recognizing that to preclude exculpation would directly and unnecessarily contravene the established common-law tort principles of causation (see, Sindell v Abbott Labs., supra; Collins v Lilly & Co., supra; Martin v Abbott Labs., supra; Abel v Lilly & Co., supra; McCormack v Abbott Labs., 617 F Supp 1521; see also, Burnside v Abbott Labs., 351 Pa Super 264, 505 A2d 973).
Clearly, the development and underlying purpose of the various concepts of liability in DES cases has been to provide a means whereby the plaintiffs, who cannot identify the actual manufacturer of the pill ingested by their mother, are allevi *520 ated of the traditional burden of proof of causation and to shift that burden to the defendants. The various theories of collective liability which have been adopted in the several jurisdictions in an effort to provide plaintiffs with a means to recovery for their injuries, were not intended to, and did not, provide DES plaintiffs with an unprecedented strict liability cause of action. However, the majority herein, by precluding exculpation of those defendants in DES cases who produced DES for pregnancy purposes but who can establish, by a preponderance of the evidence, that they did not and could not have produced or marketed the pill which caused the plaintiff’s injuries, has created such a radical concept and purports to limit it to DES claims. In the majority’s view, the defendant’s liability in DES cases is premised upon the overall risk of injury which they created to the public-at-large in producing and marketing DES for pregnancy purpose and, therefore, exculpation of those defendants who can establish that the plaintiff’s mother did not ingest their pill, would be inconsistent with the over-all risk theory of liability. By taking this view, however, the majority, while stating that it is adopting a market share theory of liability, is, in essence, despite its disclaimer of doing so, adopting a concerted action theory of liability, but has eliminated therefrom the requirement that the plaintiffs establish that the defendants tacitly agreed to produce and market DES for pregnancy use without proper testing and without adequate warnings of the potential dangers involved. Such a result, represents a radical departure from fundamental tenets of tort law and is unnecessarily unfair and inequitable to the defendants who have proven, or can prove, that they did not produce the pill which caused the injury. Moreover, this result is directly contrary to the majority’s own statement that it is rejecting the "conscious parallelism” theory utilized in Bichler v Lilly & Co. (79 AD2d 317, affd 55 NY2d 571), because, as stated by the majority herein, "[pjarallel behavior, the major justification for visiting liability caused by the product of one manufacturer upon the head of another under this analysis, is a common occurrence in industry generally. We believe, therefore, that inferring agreement from the fact of parallel activity alone improperly expands the concept of concerted action beyond a rational or fair limit; among other things, it potentially renders small manufacturers, in the case of DES and in countless other industries, jointly liable for all damages stemming from the defective products of an entire industry” (majority opn, at 508-509).
*521 I fully concur with the above-stated position of the majority and thus, I cannot agree that the imposition of liability on drug companies, in this case DES manufacturers, solely upon their contribution, in some measure, to the risk of injury by producing and marketing a defective drug, without any consideration given to whether the defendant drug companies actually caused the plaintiiFs injuries, is appropriate or warranted. Rather, I would adopt a market share theory of liability, based upon a national market, which would provide for the shifting of the burden of proof on the issue of causation to the defendants and would impose liability upon all of the defendants who produced and marketed DES for pregnancy purposes, except those who were able to prove that their product could not have caused the injury. Under this approach, DES plaintiffs, who are unable to identify the actual manufacturer of the pill ingested by their mother, would only be required to establish, (1) that the plaintiiFs mother ingested DES during pregnancy; (2) that the plaintiiFs injuries were caused by DES; and (3) that the defendant or defendants produced and marketed DES for pregnancy purposes. Thereafter, the burden of proof would shift to the defendants to exculpate themselves by establishing, by a preponderance of the evidence, that the plaintiiFs mother could not have ingested their particular pill. Of those defendants who are unable to exculpate themselves from liability, their respective share of the plaintiiFs damages would be measured by their share of the national market of DES produced and marketed for pregnancy purposes during the period in question.
I would further note that while, on the one hand, the majority would not permit defendants who produced DES for pregnancy purposes to exculpate themselves, the majority at the same time deprives the plaintiffs of the opportunity to recover fully for their injuries by limiting the defendants’ liability for the plaintiiFs damages to several liability. In my view, the liability for the plaintiiFs damages of those defendants who are unable to exculpate themselves should be joint and several thereby ensuring that the plaintiffs will receive full recovery of their damages. In addition to being fair to the DES plaintiffs, the imposition of joint and several liability is consistent with that portion of the revival statute which specifically exempted DES claims from those provisions which provide, with certain exceptions, for several liability of joint tort-feasors (see, L 1986, ch 682, § 12; CPLR 1600 et seq.). *522 Moreover, in order to ease the financial burden on the specific defendants named in the lawsuit, the defendants would have the option of seeking contribution from their fellow defendants for damages in excess of each defendant’s particular market share, and a defendant should be permitted leave to implead those DES manufacturers who the plaintiff has not joined, in order to ensure, where possible, full contribution (see, e.g., Dole v Dow Chem. Co., 30 NY2d 143). Admittedly, adherence to joint and several liability could result in a disproportion between a defendant’s potential liability for the damages suffered by the plaintiff and defendant’s actual national market share; however, the opportunity to present exculpatory evidence reduces the risk of imposing liability on innocent defendants.
The application of the aforesaid principles, although somewhat innovative and a modification of traditional tort law, (i.e., the burden of proof is on the plaintiff to prove proximate causation) would, in view of the exigent circumstances, be in furtherance of a valid public policy of imposing the burden of bearing the cost of severe injuries upon those who are responsible for placing into the stream of commerce the causative instrumentality of such injuries. Adherence to this principle would not be too dissimilar from the accepted doctrine of res ipsa loquitur which provides, in essence, that where an instrumentality which caused the plaintiff’s injuries was in the exclusive control of the defendant and the accident which occurred is one which would not ordinarily happen without negligence, these facts are sufficient to justify an inference of negligence and to shift the burden upon the defendant of coming forward with an explanation (see, e.g., Galbraith v Busch, 267 NY 230, 234; Richardson, Evidence §93, at 68 [Prince 10th ed]). Thus, this approach, unlike that taken by the majority, does not represent an unnecessary and radical departure from basic principles of tort law. By characterizing this approach as "nothing more than advocating that bare fortuity be the test for liability” (majority opn, at 513, n 3) the majority fails to perceive that this is no more and no less than a basic principle of tort law; i.e., a plaintiff may not recover for his or her injuries from a defendant who could not have caused those injuries. When the majority eliminates this fundamental causative factor as a basis for recovery, it effectively indulges in the act of judicial legislating. I would further note that if the Legislature had intended to adopt this radical approach which is at total variance with traditional *523 tort law, it could readily have done so when it enacted the revival statute for, among others, DES plaintiffs. Its refusal to do so can certainly not be deemed to be an invitation to this court to assume the legislative role.
Judged by the aforesaid standard, I conclude that the trial courts’ orders in Tigue & Margolies v Squibb & Sons (decided herewith) and Dolan v Lilly & Co. (decided herewith), to the extent that they denied the summary judgment motions of the defendant The Upjohn Company (Upjohn) in both actions and the defendant Rexall Drug Company (Rexall) in the Tigue action, were improper. In Tigue, Mrs. Tigue, the plaintiff’s mother, testified that the DES pill she ingested while she was pregnant with the plaintiff was a white, round tablet (record on app, at 709-710). Similarly, Myrna Margolies’ mother testified that the DES pill she ingested was a dark red, hard, round pill (id., at 224-226). Mr. Margolies, the plaintiff’s father, also recalled that the pills were a reddish color and Mrs. Margolies’ obstetrician stated that the DES pill he prescribed to his patients was not an Upjohn product. Moreover, in the Dolan action, Mrs. Dolan, the plaintiff’s mother, stated that the DES pill she took was a white, round, hard tablet (id., at 321, 303). This fact was corroborated by Mr. Dolan’s testimony (id., at 414, 444). Finally, it was established that Upjohn’s DES pill which was produced and marketed for pregnancy purposes, was in the form of a "perle” which is a pharmaceutical term for a dose form consisting of a soft elastic capsule containing a liquid center (id., at 2182). Based on the evidence submitted in support of Upjohn’s summary judgment motions in these two cases, I would conclude that the plaintiffs have failed to adduce sufficient proof in admissible form to raise a triable issue of fact as to whether their mothers ingested an Upjohn DES pill. Accordingly, Upjohn’s motion for summary judgment in those actions should have been granted.
Additionally, in Tigue & Margolies v Squibb & Sons (decided herewith), Rexall’s motion for summary judgment should have been granted since the plaintiffs failed to raise a triable issue of fact as to whether their mothers could have ingested a Rexall DES product during the pregnancies in question. The evidence submitted in support of Rexall’s motion established that until 1978, Rexall sold its products, including its DES pill, exclusively to Rexall Drug Stores (record, at 1934, 2203-2204, 2210). The testimony of the plaintiffs’ parents, Mrs. Tigue and Mr. and Mrs. Margolies established that they had *524 purchased their DES prescriptions from non-Rexall pharmacies during the periods of their respective pregnancies, i.e., 1960 and 1953. Based on this uncontroverted evidence demonstrating Rexall’s noninvolvement in these plaintiffs’ injuries, Rexall’s motion for summary judgment should have been granted.
As to those defendants which seek to exculpate themselves from liability in these various actions based upon the fact that they produced and marketed DES solely for nonpregnancy purposes, we agree with the majority’s conclusion that the record before the court is factually insufficient to establish that they were not in the national market of DES sold for pregnancy use (see, majority opn, at 512, n 2). Accordingly, their summary judgment motions were properly denied.
In Hymowitz v Lilly & Co. and Hanfling v Lilly & Co.: Order affirmed, etc.
Judges Alexander, Titone and Hancock, Jr., concur with Chief Judge Wachtler; Judge Mollen concurs in a separate opinion; Judges Simons, Kaye and Bellacosa taking no part.
In Tigue v Squibb & Sons and Dolan v Lilly & Co.: Order affirmed, etc.
Judges Alexander, Titone and Hancock, Jr., concur with Chief Judge Wachtler; Judge Mollen dissents in part and votes to modify in a separate opinion; Judges Simons, Kaye and Bellacosa taking no part.

 Designated pursuant to NY Constitution, article VI, § 2.