OPINION OF THE COURT
Stanley L. Sklar, J.
This is an action to recover damages resulting from the installation of asbestos-containing products, manufactured by various defendants, in approximately 250 buildings belonging to plaintiff New York Telephone Company. Defendants Asbestospray Corp., United States Gypsum Company and U.S. Mineral Corp. move for review of a May 20, 1996 order of Special Referee Donald Diamond, and for dismissal as a matter of law of claims relating to three buildings based on an as *604 serted theory of "alternative liability”.[1] For the reasons set forth below,' defendants’ motion is denied.
FACTS AND PROCEDURAL HISTORY
The complaint seeks $750,000,000 from 60 defendants for damages relating to the presence of asbestos-containing products in plaintiff’s buildings. The complaint does not identify any defendant as the manufacturer of any product at issue. Following a stipulation eliminating certain causes of action, only three causes of action remain — negligence, strict liability and restitution/indemnity. In February 1989, Referee Diamond was assigned to supervise discovery.
In December 1990, the parties agreed to a stipulation requiring plaintiff to conduct product identification disclosure and to serve its "Final Product Identification- Statements”. These statements were to contain plaintiff’s final allegations as to the specific buildings at issue, the products at issue, the defendants allegedly responsible for each of these products and the evidence on which the identification was made.
In September 1992, plaintiff served 249 Product Identification Statements. In those statements, plaintiff set forth the names of the manufacturers of the asbestos-containing products in plaintiff’s buildings. In 49 buildings, plaintiff named specific defendants as allegedly responsible for the asbestos-containing products at issue in those buildings. Most of the remaining Product Identification Statements make claims based upon market share or group liability, and name a host of manufacturers. In contrast, the Product Identification Statement for the three buildings which are the subject of this application is predicated upon alternative liability, and specifically names only two or three tortfeasor-manufacturers as the possible manufacturer of the product at issue in each building, based on an analysis of samples conducted by plaintiff’s consultant. The three buildings listing these groups of manufacturers are: (1) 59 Varick Street, building No. 11179 (Celotex Corporation,[2] United States Mineral Products Company or Asbestospray Corp.); (2) 500 Montauk Highway, building No. 32460 (Celotex Corporation or United States Gypsum Company); and (3) building 147 at JFK International Airport, building No. 37330 (Celotex Corporation or United States Gypsum Company).
*605 In March 1993, defendants began to conduct disclosure on the subject of plaintiffs Product Identification Statements. In the fall of 1993, based upon answers to written disclosure demands, defendants concluded that plaintiff had willfully destroyed documents which could have been used as evidence in their defense. Consequently, at a conference before Referee Diamond in December 1993, defendants moved for sanctions against plaintiff for its willful disregard of its disclosure obligations. Referee Diamond ordered depositions to be held concerning plaintiffs creation, maintenance and destruction of documents, and the manner in which those documents had been used as part of the process by which plaintiff prepared the Product Identification Statements.
Between December 1993 and February 1994, defendants conducted further discovery. During that discovery, it was disclosed that because of the sheer volume of documents which plaintiff’s employees had created, plaintiff had long had in place a system of periodic destruction of retained documents. It was also disclosed that due to inattentiveness of some of its employees, plaintiff had not strictly followed its own internal policies concerning preservation of documents which had been identified as relating to litigation issues, and had allowed a number of boxes of retained documents to be destroyed since the commencement of this litigation in 1987.
At a conference on February 17, 1994, defendants renewed their motions for sanctions and Referee Diamond ordered an evidentiary hearing on defendants’ charges. The hearing contemplated by Referee Diamond occurred over a period of six days in the summer of 1994. In a decision dated December 22, 1995 (the Sanctions Decision), although Referee Diamond denied nearly all the relief defendants had requested, he determined that sanctions should be imposed upon plaintiff for its failure to provide full and complete disclosure. He decided that the only sanction appropriate based on the evidence which had been presented to him was the striking of that part of plaintiffs case which sought to impose liability on the basis of "market share” or other generic theories of liability. Referee Diamond found that in order to assert a market share method[3] of imposing liability, plaintiff did not take the proper steps to staff the disclosure phase or to preserve documents, and concluded that defendants were thus entitled to sanctions.
*606 In devising a sanction, Referee Diamond determined that because of plaintiffs wealth, monetary sanctions would have to be of "draconian magnitude to be meaningful” (Sanctions Decision, at 6). Instead, he decided that the appropriate sanction for plaintiffs failure to conduct good-faith product identification disclosure was to preclude plaintiff from offering product identification evidence on any building except for those buildings where it had specifically identified a particular defendant in a particular building:
"The plaintiff is barred from seeking damages upon a claim that a defendant is one of a group engaged in the same type of asbestos related activity and damages should be apportioned among the group, on a market share theory of liability * * *
"Precluding plaintiff from recovering upon a market share theory of liability provides [defendants] with an appropriate remedy. Restricting plaintiff to showing that a particular defendant is responsible for the asbestos installed at a specific location remedies the infirmities caused by plaintiff’s failure to provide full and complete disclosure” (Sanctions Decision, at 1, 7).
Defendants did not appeal the Sanctions Decision. Instead, they sought an order clarifying the specific buildings still at issue in this lawsuit, listing in exhibit B of the proposed order those buildings where plaintiff had made specific allegations as to the manufacturer and the product at issue in the building. By letter dated February 23, 1996, plaintiff objected to the proposed order, asserting "alternative liability” as a basis of recovery for the three buildings at issue. Plaintiff contended that the Sanctions Decision was limited only to claims based on a "market share theory” of liability, and not on claims based on an alternative liability argument. Defendants objected to plaintiff’s interpretation of the Sanctions Decision on the ground that the harm to defendants caused by plaintiff’s failure to conduct good-faith product identification discovery and by its destruction of documents was the same whether plaintiff called its collective liability theory "market share”, "enterprise” or "alternative liability”. In a subsequent letter, plaintiff confirmed that it was not seeking recovery based on market share or enterprise liability.
On May 20, 1996, a conference was held before Referee Diamond to clarify this issue. Defendants sought to convince Referee Diamond that, in addition to precluding plaintiff from proving market share liability, he also intended to preclude plaintiff from proving alternative liability. Alternatively, *607 defendants sought to convince Referee Diamond that his decision to preclude plaintiff’s market share claims was not severe enough. In a written decision dated May 20, 1996, Referee Diamond rejected both assertions, making it clear that he was not precluding plaintiff from proving its case against the moving defendants on the theory of alternative liability, and had not intended to do so by the Sanctions Decision. He made clear that the sanction he determined plaintiff merited did not extend to alternative liability, a burden-shifting legal theory distinct and different from market share and other collective types of conduct-based liability. Referee Diamond further ruled that it was for the trial court to determine whether plaintiff can proceed as a "matter of law on an "alternative liability” theory of recovery.
DISCUSSION
The moving defendants now seek review of the May 20, 1996 order to include within the ambit of the Sanctions Decision the three buildings at issue on the grounds that (1) alternative liability is not applicable to New York asbestos-in-buildings cases; and (2) precluding plaintiff from offering any evidence with respect to these three buildings is consistent with the sanction imposed by Referee Diamond for plaintiff’s failure to conduct good-faith product identification discovery.
The theory of alternative liability, first applied in Summers v Tice (33 Cal 2d 80, 199 P2d 1 [1948]), is a well-recognized principle of law in New York as a viable basis for shifting the burden of proof to the defendants in an appropriate case (see, e.g., In re "Agent Orange” Prod. Liab. Litig., 597 F Supp 740 [ED NY 1984], affd 818 F2d 145 [2d Cir 1987], cert denied sub nom. Pinkney v Dow Chem. Co., 484 US 1004 [1988]; Bichler v Eli Lilly & Co., 79 AD2d 317 [1st Dept 1981], affd 55 NY2d 571 [1982]; Centrone v Schmidt & Sons, 114 Misc 2d 840 [Sup Ct, Nassau County 1982]; see also, Hamilton v Accu-Tek, 935 F Supp 1307 [ED NY 1996]).
Alternative liability is applicable "[w]here the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it” (Restatement [Second] of Torts § 433B [3]; Summers v Tice, 33 Cal 2d 80, 199 P2d 1, supra; see also, Bichler v Eli Lilly & Co., 55 NY2d 571, supra). The burden of proof as to causation in such a case is reversed and placed upon each actor to prove that he did not cause the harm (supra). The requirements for the application *608 of alternative liability are: (1) plaintiffs inability to determine which of two or more possible tortfeasors committed the tort; (2) that all possible tortfeasors are before the court; and (3) tortious conduct on the part of the tortfeasors (Catherwood v American Sterilizer Co., 139 Misc 2d 901 [Sup Ct, Erie County 1988], affd 148 AD2d 985 [4th Dept], lv dismissed 74 NY2d 791 [1989]). Thus, in an appropriate case where the plaintiff can prove all the elements required by the theory of alternative liability, this theory is available to shift to defendants the burden of proving that they did not manufacture the product in question.
Contrary to defendants’ contentions, New York courts have never held that a theory of alternative liability is inapplicable to a case in which property damage is alleged as a result of the installation of asbestos-containing material. Indeed, none of the cases cited by defendants hold that alternative liability cannot be applied in an appropriate asbestos-in-building case.
Defendants contend that alternative liability should not be applied in this case because it was rejected by the Court of Appeals in the DES context (see, Hymowitz v Eli Lilly & Co., 73 NY2d 487, cert denied 493 US 944 [1989]). The defendants err. The Court of Appeals recognized that, in DES cases, there are a great number of possible wrongdoers, many of whom may no longer exist, and that many years elapse between the ingestion of the drug and the injury. Consequently, DES defendants are not in any better position than plaintiffs to identify the manufacturer of the DES ingested, nor is there any real prospect of having all possible producers before the court. Although the Court of Appeals concluded that alternative liability was not appropriate in DES cases because the chance of identifying the particular producer which caused the injury was remote, the Court specifically noted that alternative liability may be employed in cases that, like here, involve only a small number of potential wrongdoers (supra; see also, 210 E. 86th St. Corp. v Combustion Eng’g, 821 F Supp 125 [SD NY 1993]).
Accordingly, the Court of Appeals did not hold that alternative liability is not a viable theory under New York law, but only that its requirements were not met in DES cases (see, Hamilton v Accu-Tek, 935 F Supp 1307, supra). Indeed, alternative liability has been adopted in non-DES cases where the plaintiff was unable to identify the precise manufacturer causing the injury (see, In re "Agent Orange" Prod. Liab. Litig., 597 F Supp 740, supra).
*609 Defendants also contend, citing 210 E. 86th St. Corp. v Combustion Eng’g (821 F Supp 125, supra), that alternative liability has never been applied to a New York asbestos case. 210 E. 86th St., however, is inapposite. In that case, alternative liability was rejected because the plaintiff had not shown that at least one of the defendants joined by the plaintiff had actually caused the injury. The plaintiff failed completely to accomplish a match to any defendants’ product formula, and thus failed to show that even a single defendant could be involved as the manufacturer of the offending product. The plaintiff also failed to show that all possible defendants were joined.
Here, in contrast, plaintiff has alleged all of the elements required for the application of alternative liability. Plaintiff alleges that it is unable, despite its best efforts, to distinguish which of two or more possible tortfeasors committed the torts; that it has joined all possible defendants; and that each defendant engaged in tortious conduct by manufacturing asbestos-containing fireproofing material that was made available for sale to plaintiff and, once installed, contaminated plaintiff’s buildings. Plaintiff supports these allegations with the amended affidavit of William Longo, the electron microscopist who tested the asbestos-containing samples. By this affidavit, plaintiff has shown that at least one of the moving defendants caused the alleged injury in the three buildings at issue by obtaining physical/chemical matches between the moving defendants’ products and the in-place asbestos fireproofing at the buildings in question, and that all possible defendants are joined. Specifically, Longo states that:
"With respect to three New York Telephone Company buildings as to which samples of installed spray-applied asbestos containing material were provided to [Materials Analytical Services, Inc.] for purposes of performing product identification, I have determined the following:
"a. that with respect to the New York Telephone Company building located at 50 Varick Street, the spray-applied asbestos-containing material therein installed is equally consistent with its having been manufactured by United States Mineral Products Company, The Celotex Corporation, or Asbestospray Corporation;
"b. that with respect to the New York Telephone Company building located at 500 Montauk Highway, the spray-applied asbestos-containing material therein installed is equally consistent with its having been manufactured by United States Gypsum Co. or The Celotex Corporation; *610 "c. that with respect to the New York Telephone Company known as Building 147, JFK International Airport, the spray-applied asbestos-containing material therein installed is equally consistent with its having been manufactured by United States Gypsum Co. or The Celotex Corporation.” (Amended Longo affidavit, Oct. 24, 1996, ¶8.)
Longo also states that he is "unaware of the existence of any other spray-applied asbestos-containing products used in the United States after 1960 which utilize the component formulation of the product samples” removed from the buildings at issue, other than Celotex and the moving defendants (id., 9), and concludes that "plaintiff has named all possible manufacturers who could have liability for the installation of the spray-applied product in these buildings” (id., ¶ 10).
Thus, plaintiff has shown its inability to determine which one of three defendants manufactured the asbestos-containing samples tested, and that all three possible manufacturers have been named. The third required prong — proof of wrongful conduct — may be satisfied by proof at trial that the defendants knew or should have known that their asbestos-containing products were unreasonably dangerous and would contaminate plaintiffs buildings.
Defendants further contend that an additional predicate to the application of alternative liability is "that the plaintiffs, through no fault of their own, are unable to identify which actor caused the injury” (Abel v Eli Lilly & Co., 418 Mich 311, 331-332, 343 NW2d 164, 173, cert denied sub nom. Squibb & Sons v Abel, 469 US 833 [1984]). Defendants argue that plaintiff cannot claim that through no fault of its own that it is unable to identify the actor which caused its alleged injury, because it has been sanctioned by Referee Diamond for its "cavalier disregard of its disclosure obligations” (Friedman affidavit, Sept. 6, 1996, exhibit C, at 5). However, in his May 20th decision, Referee Diamond specifically rejected the argument that the destruction of documents was intentional, holding that: "I don’t buy the 'knowingly and intentionally’ * * * I don’t think the telephone company willfully destroyed any documents and I think that’s pretty clear” (decision and order, May 20, 1996, at 31-32).
Defendants also maintain that all possible manufacturers responsible for plaintiff’s alleged damage are not before the court, because in each of the three buildings for which it seeks recovery based on alternative liability, plaintiff contends that one of the potential manufacturers is Celotex Corporation, *611 which is in bankruptcy. The court rejects this argument. Where, as here, a defendant cannot be joined because it is in bankruptcy, the burden of proof can still be shifted as long as all other possible defendants are before the court (see, University Sys. v United States Gypsum Co., 756 F Supp 640 [NH 1991]).
Finally, defendants argue that precluding plaintiff from recovering under an alternative liability theory is consistent with the sanction imposed by Referee Diamond as punishment for plaintiff’s failure to conduct good-faith product identification discovery. However, Referee Diamond was vested with all the powers of the court (see, CPLR 3104 [c]), and thus, had the discretion to limit the sanction to precluding plaintiff from presenting proof of market share liability. This exercise of discretion must be upheld. Moreover, in his May 20, 1996 decision, Referee Diamond made it clear that he was only precluding plaintiff from proving market share liability. He specifically rejected the notion that he had any intention of eliminating alternative liability claims, or that elimination of such claims would be the appropriate sanction for plaintiff’s inadvertent destruction of a few boxes of documents.
Accordingly, defendants’ motion to dismiss plaintiff’s alternative liability claims is denied. The court has considered the remaining claims, and finds them to be without merit.

. Plaintiff has not asserted alternative liability claims against any of the nonmoving defendants.

. Celotex Corporation, while listed as a possible manufacturer, is in bankruptcy, and is not before this court.

. A successful market share claim would impose liability proportional to the market share which each defendant’s products of a particular type occupied relative to the New York State market for such product at the time of the sale and installation in plaintiffs buildings.