[679 NYS2d 21]

New York Telephone Company, Respondent, v AAER Sprayed
Insulations, Inc., et al., Defendants, and United States
Gypsum Company, Appellant.

First Department, October 20, 1998

---

### APPEARANCES OF COUNSEL

*James W. Harbison, Jr.,* of counsel, New York City (*Carolyn W. Jaffe* on the brief; *Morgan Lewis & Bockius, L. L. P.,* attorneys), for appellant.

*Henry Gluckstern,* New York City, and *Marc S. Moller* of counsel (*Kreindler & Kreindler,* attorneys), for respondent.

### OPINION OF THE COURT

SAXE, J.

We address on this appeal the required factual predicate for application of a theory of alternative liability in a products liability action.

This lawsuit concerns an asbestos-in-building claim. The plaintiff New York Telephone Company (NY Telephone) began this action in July 1987, naming 60 defendants including manufacturers and installers of building products containing asbestos, seeking money damages of $750 million representing asbestos abatement and containment costs for approximately 250 of its buildings.

At the outset, the complaint failed to specifically identify any defendant as the manufacturer of an asbestos-containing product found in any particular building. However, pursuant to a stipulation and order entered December 5, 1990, in September 1992 NY Telephone served 249 Final Product Identification Statements, identifying the specific products used in 49 of its buildings. As to the remaining buildings, plaintiff relied upon an unspecified collective liability theory to seek damages against several defendants without pinpointing which defendant manufactured the product contained in each of those buildings.

During discovery, the IAS Court found that the plaintiff had acted improperly in identifying and turning over documents; it was demonstrated that NY Telephone had destroyed approximately 100 boxes of documents, some of which had been

marked by NY Telephone as pertinent to this litigation. The Special Referee appointed to supervise disclosure imposed a sanction that is not challenged on appeal. Under his order, plaintiff was precluded from employing a theory of market share liability in this action.

While the Referee's initial decision of December 22, 1995 had not specifically limited the preclusion order to use of a theory of market share liability, when the parties sought clarification at a May 20, 1996 conference as to whether the plaintiff was precluded from pursuing *any* collective liability theory, or just from pursuing a market share liability theory, the Referee stated that he had not intended to preclude plaintiff from pursuing an alternative liability theory. There is no issue raised on appeal as to the Referee's exercise of discretion in modifying his earlier ruling.

Taking the position that plaintiff's allegations did not support application of a theory of alternative liability, three defendants, U.S. Mineral Products, Asbestospray Corporation and United States Gypsum Company, then made the underlying motion to dismiss plaintiff's claims as to three of the specified buildings, for which they were named by plaintiff's expert as possible manufacturers of the asbestos-containing substances contained in the buildings. Specifically, the plaintiff's consultant, electron microscopist Dr. William Longo, had asserted that as to the plaintiff's building located at 50 Varick Street, the manufacturer of the asbestos there was either Celotex Corp., U.S. Mineral Products Co., or Asbestospray Corporation. As to both 500 Montauk Highway and Building 147 at JFK International Airport, Dr. Longo asserted that the manufacturer was either Celotex Corp. or United States Gypsum Company.[1]

In an order dated March 19, 1997 (173 Misc 2d 602), the motion court held that plaintiff's allegations were sufficient to support all the elements required for application of a theory of alternative liability, and he therefore denied defendants' motion to dismiss.

Defendants then moved to renew based upon evidence that in prior lawsuits, Dr. Longo had contradicted himself numerous times, and that elsewhere he had specifically stated, contrary to his affidavit in the present case, that he was able to distinguish U.S. Mineral's product from Celotex's product. The

---

1. Although Dr. Longo's first affidavit failed to name United States Gypsum Company, his amended affidavit corrected that error.

court denied the motions in an order dated January 7, 1998, as merely raising issues regarding Dr. Longo's credibility.

Defendant United States Gypsum Company now appeals from both of these orders as they relate to 500 Montauk Highway and Building 147 at JFK International Airport.[2]

For the reasons that follow, we disagree with the motion court and find that application of a theory of alternative liability would be inappropriate here.

Normally, a plaintiff must prove that the conduct of a specific defendant was the proximate cause of his injuries (Prosser and Keeton, Torts § 41, at 263 [5th ed]). In products liability actions, it is generally required that a plaintiff identify the exact defendant whose product caused the injury (*see, Hymowitz v Eli Lilly & Co.*, 73 NY2d 487, 504, *cert denied* 493 US 944).

However, in appropriate circumstances, courts permit a plaintiff to proceed despite the inability to identify the wrongdoer. A classic situation is found in *Summers v Tice* (33 Cal 2d 80, 199 P2d 1), where two hunters, armed with identical shotguns and ammunition, fired simultaneously into the brush at what they mistakenly believed to be a bird, and a third hunter situated there sustained injuries from *one* of the two identical weapons. The court recognized that the injured hunter would be unable to prove that either of the two shooters was the cause of his injuries, since there was only a 50% chance that either was the responsible party. The court therefore allowed the burden of proof to shift to the defendants; each was afforded the opportunity of exculpation, otherwise both would be held jointly and severally liable (*see also*, Restatement [Second] of Torts § 433 B [3]). The viability of the tort doctrine of alternative liability was recognized in this State in *Hymowitz v Eli Lilly & Co.* (73 NY2d 487, *supra*).

In order to apply a *Summers v Tice* theory of alternative liability in its classic form, a plaintiff must demonstrate that all possible tortfeasors are before the court; that all have breached a duty toward the plaintiff; that the conduct of one of the defendants has caused his injuries; and that the defendants, as a group, have better access to information concerning the incident than does the plaintiff (*see, Hymowitz v Eli Lilly & Co., supra,* at 505-506; *Summers v Tice, supra,* 33 Cal 2d, at

---

**2.** In the face of information brought out on the defendants' renewal motions, plaintiff dropped its collective liability claim regarding 50 Varick Street; the claim regarding the remaining two buildings names only Celotex, now in bankruptcy, and United States Gypsum as possible manufacturers.

86, 199 P2d, at 4; Restatement [Second] of Torts § 433 B, comment *h*).

It has been repeatedly held that this approach is inapplicable to claims involving the manufacture of dangerous medications such as DES, where the large amount of manufacturers, the formulations of the product, and the passage of time prior to injury make it virtually impossible to identify which manufacturer injured the plaintiff and to ensure that all potential tortfeasors have been brought before the court. It is in this context that the doctrine of "market share liability" evolved (*see, e.g., Sindell v Abbott Labs.*, 26 Cal 3d 588, 607 P2d 924, *cert denied* 449 US 912; *Collins v Eli Lilly Co.*, 116 Wis 2d 166, 342 NW2d 37, *cert denied sub nom. Squibb & Sons v Collins*, 469 US 826; *Martin v Abbott Labs.*, 102 Wash 2d 581, 689 P2d 368).

In *Hymowitz v Eli Lilly & Co.* (73 NY2d 487, *supra*), the Court of Appeals adopted the "market share" approach in the context of DES litigation. In doing so, it explained that the doctrine of alternative liability is inapplicable in DES cases, since "use of the alternative liability doctrine generally requires that the defendants have better access to information than does the plaintiff * * * that all possible tort-feasors be before the court * * * [, and] that * * * there is a small number of possible wrongdoers, all of whom breached a duty to the plaintiff" (73 NY2d, *supra,* at 505-506). The Court explained that in DES cases "there is a great number of possible wrongdoers, who entered and left the market at difference times, and some of whom no longer exist" and that in view of the passage of time between the manufacture and the alleged injury, "DES defendants are not in any better position than are plaintiffs to identify the manufacturer of the DES ingested in any given case, nor is there any real prospect of having all the possible producers before the court" (*supra,* at 506). The Court therefore concluded that in the DES context, a plaintiff unable to name the manufacturer of the drug ingested by her mother may sue a number of different manufacturers of the drug, without proof of proximate causation; however, she will be limited to collecting from each defendant the percentage of her damages that represents that defendant's national market share of the product (*supra,* at 512-513).

Market share liability is similar to alternative liability in that a plaintiff may recover notwithstanding an inability to prove that a particular defendant was the proximate cause of the alleged injuries. However, it differs significantly from

alternative liability in that a plaintiff's obligation in a market share case is more limited: the burden of proof may shift upon a mere showing that the defendants were engaged in manufacturing the product at issue, without reference to any proof that it was their particular product that caused injury to the plaintiff. Actual causation of the plaintiff's injury by the defendant's own product need not be proved. However, as a result, plaintiff's right to a money judgment as against each defendant is limited to a percentage of plaintiff's damages, representing that defendant's market share of the product in question.

In contrast, under alternative liability, a nexus between each defendant's conduct and the plaintiff's injury is fundamental (*see, Thompson v Johns-Manville Sales Corp.*, 714 F2d 581, 583, *cert denied* 465 US 1102 ["to apply [alternative liability] to defendants as to which there is no proof of any such connection would beg the question of causation entirely"]). Once that nexus is established, all defendants who are unable to exculpate themselves will be held jointly and severally liable for the full amount of plaintiff's damages.

The facts alleged in the present case do not satisfy the requirements recited in *Summers v Tice (supra)* and the related authorities; indeed, they more closely parallel the products liability paradigm presented in *Hymowitz (supra)*. It is apparent that plaintiff's attempt to shoehorn its case into the alternative liability mold is due to the ruling precluding it from employing a "market share" liability theory in making its case. However, the suggested permutation of the alternative liability paradigm would constitute a substantial distortion and misuse of the theory of alternative liability and would work an injustice on defendant United States Gypsum Company.

In the classic application of alternative liability, it must be established that *each* of the defendants breached a duty of care *towards the plaintiff*; each must be, in the words of the Restatement of Torts, a "proved wrongdoer" (Restatement [Second] of Torts § 433 B, comment *f* ["(T)he reason for the exception is the injustice of permitting proved wrongdoers, who among them have inflicted an injury upon the entirely innocent plaintiff, to escape liability merely because the nature of their conduct and the resulting harm has made it difficult or impossible to prove which of them has caused the harm"]).

Where only one of the defendants, at most, can have acted tortiously toward the plaintiff, the burden of proving causation is not shifted, but remains with the plaintiff. An illustration is

provided by the Restatement of Torts: "Over a period of three years A successively stores his furniture in warehouses operated by B, C, and D. At the end of that time A finds that his piano has been damaged by a large dent in one corner. The nature of the dent indicates that it was caused by careless handling on a single occasion. A has the burden of proving whether the dent was caused by the negligence of B, C, or D." (Restatement [Second] of Torts § 433 B, illustration 10.) The burden of proof never shifts to B, C and D precisely because only one of the warehouse defendants has acted negligently toward the plaintiff (*see*, Restatement, *op. cit.*, § 433 B, comment *g*; *see also*, *Pennfield Corp. v Meadow Val. Elec.*, 413 Pa Super 187, 604 A2d 1082; Annotation, 5 ALR2d 98, 100 ["The situation where there are wrongful or negligent acts committed by all of the defendants, with only one act producing the plaintiff's injury * * * is to be distinguished from the situation where there is but a single injury and a single act of negligence committed by only one of the defendants, and the proof is not clear as to which one is guilty of the *single* act of negligence" (emphasis supplied)]).

Here, virtually by definition, plaintiff cannot establish a nexus between the conduct of *both* defendants (Celotex and United States Gypsum) and plaintiff's injury; plaintiff's reliance on a collective liability approach is caused by plaintiff's inability to prove which one, if any, of the named defendants acted tortiously toward it. This circumstance renders the *Summers v Tice* approach inapt.

To the extent it argues that both defendants acted tortiously toward plaintiff by placing their products into the stream of commerce, plaintiff seeks to "transform alternative liability into market share liability with one glaring difference: defendants who are unable to exculpate themselves would be jointly and severally liable instead of liable only for a percentage of the judgment based on their market share" (*City of Philadelphia v Lead Indus. Assn.*, 994 F2d 112, 128).

Also left unsatisfied is the critical element of alternative liability that all possible tortfeasors be present before the court. Where the tortious conduct is the equivalent of that in *Summers v Tice (supra)*—one clear event, regarding which all the participants are undisputed and capable of identification—the requirement that "all possible tort-feasors be before the court" (*Hymowitz v Eli Lilly & Co.*, 73 NY2d, *supra*, at 505, citing *Summers v Tice, supra*, at 86) implies a virtually absolute level of certainty. In contrast, products liability cases involve a series

of events occurring over a period of years, whose participants are necessarily uncertain. By virtue of the nature of the industry, "asbestos cases often have less than the complete set of possible tortfeasors before the court" (*Rutherford v Owens-Illinois, Inc.,* 16 Cal 4th 953, 978, 941 P2d 1203, 1220). As in the context of DES manufacturing, manufacturers have "entered and left the market at different times, and some * * * no longer exist" (*Hymowitz v Eli Lilly & Co., supra,* at 506).

In the present case we are asked to rely solely upon the bare assertion of Dr. William Longo that he is "unaware of the existence of any other spray-applied asbestos-containing products used in the United States after 1960 which utilize the component formulation of the product samples removed from the New York Telephone Company buildings at issue" and his conclusory opinion that "plaintiff has named all possible manufacturers who could have liability for the installation of the spray-applied product in these buildings."

In a vacuum, such an assertion, no matter how bare, may be viewed as creating a question of fact on the point, rendering the existence of inconsistencies in Dr. Longo's factual assertions in this and other cases as merely creating an issue as to his credibility, normally a question of fact. However, the real question here is whether the application of alternative liability (as opposed to market share liability) should be permitted at all where there is, *at best,* a question of fact as to whether all possible tortfeasors are before the court. We conclude that the assertion of one expert, offering his opinion that all possible tortfeasors are before the court, is a far cry from the level of certainty the court should require before adopting the burden shifting and imposition of joint and several liability deemed appropriate in the *Summers v Tice (supra)* context. Indeed, the evidence submitted upon renewal, regarding Dr. Longo's prior changes of opinion as to the purported impossibility of specifically identifying the manufacturer of a particular product, further demonstrates why such an opinion should not be accepted as sufficient basis to support the adoption of alternative liability in this context.

There is one final, but important, distinction between the plaintiff's claim and the classic alternative liability situation. In *Summers v Tice,* the defendants were in a better position than the plaintiff to identify the actual tortfeasor (*see, Hymowitz v Eli Lilly & Co., supra,* at 505). In *Hymowitz,* one ground for declining to apply alternative liability was that those DES defendants were, due to the passage of time, in no better posi-

tion than the plaintiffs to identify the correct manufacturer (*supra,* at 506). Here, plaintiff is in no worse position to identify the correct manufacturer; indeed, it was arguably in a better position prior to its own destruction of documents that might have assisted the defendants in exculpating themselves.

The plaintiff is unable to demonstrate with an appropriate degree of certainty that all possible tortfeasors are before the court, that all named defendants acted tortiously toward the plaintiff, and that these defendants are in a better position than the plaintiff to identify which defendant manufactured the products in question. Under the circumstances, the appropriate theory upon which to proceed is that of market share liability rather than alternative liability. That this option was foreclosed due to plaintiff's own misconduct should not result in the placement of an undue burden on the appellant here. We therefore reject application of the theory of alternative liability in this matter.

Accordingly, the order of the Supreme Court, New York County (Stanley Sklar, J.), entered on or about March 19, 1997, which denied defendant motion to dismiss the plaintiff's claims as against it based on the theory of alternative liability, should be reversed, on the law, with costs, and the motion granted. The appeal from the order of the same court and Justice, entered on or about January 7, 1998, which denied defendant-appellant United States Gypsum Company's motion for renewal, should be dismissed, without costs, as academic, in view of the foregoing.

MILONAS, J. P., NARDELLI and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered on or about March 19, 1997, reversed, on the law, with costs, defendant-appellant's motion to dismiss the plaintiff's claims as against it based on the theory of alternative liability granted. Appeal from order, same court and Justice, entered on or about January 7, 1998, dismissed, without costs, as academic, in view of the foregoing.