# STATE OF MICHIGAN

# COURT OF APPEALS

KHALANI CARR,

      Plaintiff-Appellant,

v

ROGER A. REED, INC., doing business as REED
WAX, KELLER HEARTT COMPANY, INC.,
AMOCO OIL COMPANY, also known as BP
PRODUCTS NORTH AMERICA, INC., THE
INTERNATIONAL GROUP, INC., and SASOL
WAX NORTH AMERICA CORPORATION, also
known as SASOL WAX NORTH AMERICA,
INC., also known as SASOL CHEMICALS USA,
LLC,

      Defendants-Appellees,

and

PROS SERVICE, INC.,

      Defendant.

UNPUBLISHED
June 20, 2017

No. 330115
Oakland Circuit Court
LC No. 2013-134098-NI

Before: M. J. KELLY, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

Plaintiff appeals as of right following the trial court's grant of summary disposition to defendants under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm the grant of summary disposition as to defendants Roger A. Reed Inc., Amoco Oil Company, and The International Group, Inc. We reverse the grant of summary disposition to defendants Keller Heartt Company Inc. and Sasol Wax North America Corporation.

## I. FACTUAL BACKGROUND

Plaintiff, a DTE employee, was injured while performing repair work to electrical components located in a city manhole. Part of the work involved cleaning the components using a hot paraffin wax. The wax was melted on the job site in a kettle intended for that purpose.

-1-

Plaintiff's co-worker testified that when they got to the job site, the kettle already had some wax in it and that, after adding additional wax, he heated the kettle and gave it to plaintiff, who was in the manhole. A fire began in the manhole, and there appears to be no dispute that the fire began when the paraffin wax ignited. Plaintiff suffered serious injury. In this suit, plaintiff alleges that the wax supplied to DTE failed to contain adequate information and warning about the unusual flammability of the wax. He alleged that if that information had been provided, the wax would have been handled in a manner to prevent his injury.

This case presents an unusual circumstance. Two companies, Keller Heartt and Reed,[1] were the suppliers of identical paraffin wax to DTE. Each defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(10) on the grounds that there was no evidence from which a jury could reasonably conclude that it had supplied the specific batch of wax used on the date of injury. The trial court agreed and dismissed the claims against each defendant. Plaintiff appeals from each of those orders.

II. ANALYSIS

Summary disposition under MCR 2.116(C)(10) is appropriate if, after considering the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion, no genuine issue of material fact exists. *Klein v HP Pelzer Auto Sys, Inc*, 306 Mich App 67, 75; 854 NW2d 521 (2014). "The trial court is not permitted to assess credibility, or to determine facts on a motion for summary disposition." *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

Plaintiff initiated this action under a negligence theory based on the failure to warn. Therefore, as part of the prima facie case, plaintiff must show that a failure to warn attributable to the manufacturer or supplier was a proximate cause of his injuries. *Skinner*, 445 Mich at 162. Establishing proximate cause entails proof of two separate elements: (1) cause in fact, and (2) legal cause, also known as "proximate cause." *Id.* at 162-163. Cause in fact requires a showing that "but for" the defendant's actions, the plaintiff's injury would not have occurred. *Id.* at 163. Legal cause, on the other hand, involves examining the foreseeability of consequences and whether a defendant should be held legally responsible for such consequences. *Id.* In *Skinner*, our Supreme Court explained that "the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id.* at 164-165. It is not sufficient for a plaintiff "to submit a

---

[1] Defendants Amoco Oil Company and The International Group Inc., manufactured the wax that defendant Roger A. Reed, Inc. supplied to DTE, and these defendants will collectively be referred to as the Reed defendants. Defendant Sasol Wax North America Corporation manufactured the wax that defendant Keller Heartt supplied to DTE, and these defendants will collectively be referred to as the Keller Heartt defendants.

causation theory that, while factually supported, is, at best, just as possible as another theory." *Id.* at 164.

DTE's records and the testimony of its employees established that DTE did not obtain wax from any company other than Keller Heartt and Reed. Neither defendant has put forward any evidence to suggest otherwise. Therefore, Keller Heartt's claim that they did not supply the wax used on the day of the accident unavoidably leads to the conclusion that Reed was the supplier. And Reed's claim that they did not supply the wax used on the day of the accident unavoidably leads to the conclusion that Keller Heartt was the supplier. In other words, there is no question of material fact but that the wax used on the day of plaintiff's accident was supplied by either Keller Heartt or Reed.

## A. KELLER HEARTT

There is more than sufficient circumstantial evidence to create a question of fact regarding whether the wax that was added to the kettle before it was handed to plaintiff was manufactured and supplied by the Keller Heartt defendants. Keller Heartt delivered wax blocks that measured approximately 19 X 12 X 1 1/2 inches. At the service center where the wax was stored, DTE wrapped the Keller Heartt slabs in brown or manila paper.[2] Because of the size of the blocks, DTE employees who needed to use it would break the wax into pieces to fit them into a kettle to melt the wax for use on jobs. By contrast, the Reed wax was delivered in much smaller blocks, about 3.5 X 3.5 X ¾ inches, that could be placed into the kettle without the need to break them into smaller pieces. According to the record evidence, Plaintiff went to the job-site with three other employees. One of them, Akil Williamson, was responsible for ensuring the truck was stocked with necessary materials for the job assignment. Williamson did not recall whether the truck was already stocked with paraffin wax or if he loaded it that day. But he testified that the type of wax in the truck was wrapped in brown paper, i.e. consistent with Keller Heartt wax. He also recalled breaking the wax into pieces and inserting them into the kettle to melt. Erik O'Connell, another employee present at the incident, also testified that the wax outside the manhole had been broken from a big block and that when the truck was loaded, the only wax at the Service Center was in large blocks. Plaintiff similarly testified that the wax he saw at the service center that day was 1 ½ feet to 2 feet long and two inches thick and that there were also broken up pieces.

Furthermore, photographs taken at the scene shortly after the accident show two large and several smaller, irregularly-shaped pieces of wax on a fire blanket, i.e. pieces of a large block that had been broken off rather than the Reed-style bricks. Looking at the photograph, Williamson testified at his deposition that "[i]f that's the wax that's out there, then, yes, that was probably the wax I would have been using." Three other DTE employees, including its purchasing officer testified that the wax depicted in the photos was not Reed wax. No wax consistent with the size and shape of the Reed smaller bricks was depicted on the photos of the job-site.

---

[2] Although Reed wax had been ordered by the time of the accident, the wax fitting the description of the Keller Heartt defendants' product remained available to DTE employees.

In response, Keller Heartt argues that a post-deposition affidavit signed by Williamson establishes beyond a question of fact that the wax that caused the fire was not Keller Heartt wax. We disagree. In his affidavit, Williamson averred that he did not know which of the two companies' wax he placed in the kettle that day and that if Reed wax had been on the truck he would have used it first because it was easier. However, even assuming that is true, there is no testimony that Reed wax was on the truck or present at the job site. Moreover, Williamson testified that the wax on the truck was in a brown wrapping, which is consistent with Keller Heartt product, not Reed product. O'Connell testified that the only wax at the Service Center was the large blocks and, while plaintiff at one point in his deposition said there was Reed wax there, he went on to describe the wax he saw as being 1 ½ feet long and two inches thick, a size consistent only with the Keller Heartt wax. And, as noted, the only wax photographed at the scene is of a size consistent with Keller Heartt wax.

In sum, while Williamson's affidavit suggests that it was *possible* that Reed wax was used, there is no evidence to support the conclusion that it was *probable* that Reed wax was used. By contrast, there is substantial evidence to support the conclusion that it was more probable than not that Keller Heartt was the wax loaded into the kettle.[3] Therefore, we reverse the grant of summary disposition to the Keller Heartt defendants.

## B. REED

For the reasons just discussed, the record does not contain evidence to support the conclusion that it was more likely than not that Reed provided the relevant wax. There is no evidence that Reed wax was at the job site or even on the truck. There is evidence to support the conclusion that Reed wax was available at the service center, but that is not sufficient to create a question of material fact. See *Skinner*, 445 Mich at 164-165 (the evidence must show that it is more than just a possibility that the defendant's product was the cause of the plaintiff's injury).

Plaintiff, essentially conceding the lack of evidence that Reed's wax was loaded into the kettle, has not relied on traditional tort law in its response to Reed's motion for summary disposition. Rather, plaintiff argues that, because there is no way to determine whether the wax that was already in the kettle at the time Williamson added the additional wax and heated it was provided by Reed or Keller Heartt, it can rely on the theory of alternative liability defined in *Abel v Eli Lilly and Company et al*, 418 Mich 311; 343 NW2d 164 (1984). However, this theory may not to be substituted for traditional tort principles in this case. Alternative liability may be employed only where each of the multiple defendants has produced the same allegedly defective product, and there is no evidence which of the defendant's manufactured the particular unit of the product that ultimately caused the injury. *Id.* at 334. As the *Abel* Court cautioned, this theory may only be used where "to do otherwise would leave an innocent plaintiff remediless." *Id.* at 335. "Where plaintiffs are *able* to identify the causation in fact of their injury, traditional tort remedies must be used to secure relief." *Id.*

---

[3] The burden of proof is "more likely than not," not absolute certainty. See *Skinner*, 445 Mich at 165.

In this case, as just noted, there is sufficient evidence for a jury to conclude that Keller Heartt's product was the one loaded into the kettle and so was a cause in fact of plaintiff's injury. We agree with plaintiff that it is impossible to determine which company's wax was in the kettle before more was added by Williamson at the job site. However, this does not alter the fact that plaintiff has an available remedy in this case – its suit against Keller Heartt based on what was added at the job site. Thus, this is not a situation where plaintiff is without a remedy. For the alternative liability theory to apply, it would have to be impossible to determine which of the two companies wax was in the kettle upon arrival *and* which was added. If that were the case, we would have to address the question whether the alternative liability theory was implicitly abolished by the statutory elimination of joint and several liability as defendants contend. But because plaintiff has a viable claim under traditional tort principles, we do not address that question. Whether plaintiff is entitled to compensation from the Keller Heartt defendants remains for the jury to determine, but he has a viable claim within the rubric of traditional tort principles and so may not rely on a theory of alternative liability. For this reason, we affirm the trial court's decision to grant summary disposition to Reed.

### III. ISSUES ON REMAND

Defendants have argued that regardless of the question now before us, they are entitled to dismissal of plaintiff's claims based upon the defense that plaintiff was a sophisticated user. The trial court did not address that question or examine the facts relevant to it. Accordingly, we do not address it here and leave it to the trial court to do so on remand at defendant's request. See *Heydon v Media One of Southeast Mich Inc*, 275 Mich App 267, 278; 739 NW2d 373 (2007) (this Court need not address issues not ruled on by the trial court).

Given our determination that there is no factual basis to support a conclusion that Reed wax was more likely than not used, we anticipate that on remand the parties may disagree on the status of any notices of non-party at fault already filed or that may be filed following our decision as to the Reed defendants. That issue is likely to engender another appeal to this court and further delay for the parties, and so in the interest of judicial efficiency we address it now. See *People v Hermiz*, 462 Mich 71, 77; 611 NW2d 783 (2000) (Opinion of TAYLOR, J.) (stating that it is appropriate to review issues not raised by the parties when justice requires doing so and determining that judicial economy and finality are factors that support reviewing such an issue).

In order to obtain an assessment of fault against a non-party, the party asserting such fault must demonstrate that the non-party's negligence, or other actionable conduct, was a cause of plaintiff's injury. MCLA 600.6304(8). The trial court has concluded, and we have affirmed, that evidence, sufficient to allow a reasonable jury to find Reed at fault, does not exist.[4] Thus, it

---

[4] Keller Heartt had a full opportunity to present evidence in opposition to Reed's motion and presented none. Presumably this is because none existed since evidence that the wax was provided by the Reed defendants would have been highly favorable to Keller Heartt. If Keller Heartt was aware of such evidence but did not provide it, it may not now file a notice of non-party fault based upon it in light of MCR 2.112(K)(3)(c) which bars the filing of a notice more than 91 days after initial pleadings unless the "facts on which the notice is based were not and

would be improper for any party, either plaintiff or Keller Heartt to present such a claim to the jury.  See *Romain v Frankenmuth Mutual Ins Co*, 483 Mich 18, 20, 22; 762 NW2d 911 (2009).

## V.  CONCLUSION

We affirm the trial court's dismissal of the Reed defendants and reverse the trial court's dismissal of the Keller Heartt defendants.  The matter is remanded to the trial court for further proceedings and trial.   We do not retain jurisdiction.  Reed may tax appellate costs against plaintiff.  Plaintiff may tax appellate costs against Keller Heartt.  MCR 7.219.


/s/ Michael J. Kelly
/s/ Jane M. Beckering
/s/ Douglas B. Shapiro

---

could not with reasonable diligence have been known to the moving party."  Moreover, even if that standard is met, the notice may not be filed if, as here, it would "result in unfair prejudice to the opposing party."  *Id.*